M. L. FLOWE, LAURA J. WILLIAMS AND HUSBAND, M. A. WILLIAMS, B. B. FLOWE, AND H. P. FLOWE v. D. B. HARTWICK.

(Filed 23 December, 1914.)

1. **Contracts — Equity — Specific Performance—Subscribed by Party—Interpretation of Statutes—Statute of Frauds.**

   The courts of our State will enforce specific performance of a binding and definite contract to convey lands in the absence of fraud, mistake, undue influence, or oppression, and under our statute, Revisal, sec. 976, requiring that such contracts or some memorandum or note thereof shall be put in writing and signed by the party to be charged therewith, etc., it is unnecessary that the writing be subscribed, if the writing in express terms or by reasonable intendment contains a promise to convey on the part of the owner, and his signature, evincing a purpose to come under such obligation, appears anywhere in the instrument.

2. **Contracts—Statute of Frauds—Principal and Agent—Parol Authority.**

   The requirement to make a binding and valid writing to convey lands, that the instrument shall be signed by the party or his agent thereunto lawfully authorized, does not extend to a written authority from the principal to the agent, for such authority is sufficient if given by parol.

3. **Contracts to Convey Lands—Defects of Title—Specific Performance—Diminution in Price—Damages.**

   When a vendor's title to lands proves to be defective in some particulars, or his estate is different from that which he agreed to convey, unless the defects are of a kind and extent to change the nature of the entire agreement and affect its validity, the vendee may, at his election, compel a conveyance of such title or interests as the vendor may have and recover a pecuniary compensation or abatement of the price proportioned to the amount and value of the defect in title and deficiency in the subject-matter: a principle which usually prevails where the defects existed at the time of making the contract, but which, at times, extends to such as arise later.

4. **Contracts to Convey—Statute of Frauds—Deeds and Conveyances—Delivery—Evidence—Extraneous Matters—Parol Evidence.**

   While it has been decided that an undelivered deed, substantially containing the contract to convey lands, will be allowed the effect of a written memorandum, within the meaning of the statute of frauds, the doctrine only obtains when the writing in the deed sufficiently expresses the contract, and the right of the grantee to demand its delivery does not depend upon extraneous matters resting in parol.

5. **Contracts to Convey—Deeds and Conveyances—Principal and Agent—Ratification.**

   When an unauthorized contract has been made for an alleged principal, who is sought to be bound thereby, it is necessary that the agent must have contracted or professed to have contracted for the principal, and the latter must have signified his assent or intent to ratify, either by word or conduct. Hence, where the tenant for life in lands has executed a writ-

FLOWE v. HARTWICK.

ten contract to convey the lands upon condition, resting in parol, that all the remaindermen should convey their interest therein,. and a deed was signed by the parties, but was left undelivered in the hands of a party in interest, a minor and remainderman, who destroyed the deed after coming of age, it is *Held*, that the contract is not enforcible, there being no evidence that the life tenant assumed to act as the agent of the remaindermen or that they had ratified his acts.

APPEAL by defendant from *Long, J.*, at August Term, 1913, and from *Harding, J.*, at April Term, 1914, of CABARRUS.

Civil action to recover possession of a tract of land and to remove a cloud from title to same, arising by reason of a certain memorandum or contract in writing, signed by Mrs. M. L. Flowe, in terms as follows:

HICKORY, N. C., 2 October, 1909.

Received of Baker Hartwick ($1) one dollar, as part payment on the farm this day purchased of me, adjoining the lands of himself, Linker, and others, and known as the John Means place. It is understood and agreed that all wood now cut on the land belongs to M. L. Flowe, and she has the right to move same whenever it is convenient for her.

MRS. M. L. FLOWE,
*By* C. L. WHITNER,
*Attorney for Mrs. M. L. Flowe.*
(Signed)   M. L. FLOWE.   [SEAL]

The complaint alleged that this memorandum was only to become a binding contract on condition that her coplaintiffs should concur and join therein.

Defendant answered, denying plaintiffs' right to recover, and alleged that in October, 1909, they had contracted to sell defendant the land in controversy at the price of $3,300, and plaintiff M. L. Flowe had signed and executed the written contract above set out, and that all the plaintiffs concurred in the agreement and were bound by same.

Defendant further set up a claim for betterments by reason of improvements put upon the land which he held under the contract, etc.

On the trial it appeared that plaintiff M. L. Flowe, who signed the contract, had a life estate therein, and the remainder was owned by her children, coplaintiffs, Mrs. Laura Williams and B. B. and H. P. Flowe; that the contract was made and signed by M. L. Flowe, the mother, and was not authorized by the children, nor were they at the time cognizant of the same so far as appears from the testimony; that subsequently a deed conveying the land was prepared and signed by the children, but the same was never delivered; that upon being signed by Mrs. Laura Williams and B. B. Flowe, it was then handed to H. P. Flowe, who was at the time a minor, and the parties conferred together as to the pro-

167—29

priety of instituting proceedings to enable them to pass a perfect title, and meantime H. P. Flowe, having come of age, destroyed this deed and, as stated, same was never delivered.

There was allegation with evidence for plaintiff tending to show that the deed was not signed by the children with intent to ratify their mother's contract, and that M. A. Williams, husband of Laura, had not signed the deed, nor was the privy examination of the wife taken; and allegation and evidence *contra* for defendant.

On the trial before *Judge Long,* August Term, 1913, the jury rendered the following verdict:

1. Did the plaintiff M. L. Flowe agree in writing to convey the land in controversy to D. B. Hartwick, agreeably to the terms of the paper-writing of 2 October, 1909, and set forth in the first paragraph of the further answer? Answer: "Yes, but agreeably to the terms set forth in Exhibit G in the evidence."

2. Did the defendant Hartwick afterwards cause to be prepared a deed purporting to convey the land referred to in the memorandum set out in the first issue, and was said deed signed by the plaintiffs or any of them, and if so, which ones of them signed the deed? Answer: "All of them."

3. In your answer to the second issue, if it is found that the plaintiffs or any of them other than Mrs. Flowe signed the said deed, did they do so with the purpose to ratify and carry out the contract alleged to have been made by Mrs. M. L. Flowe with the defendant? Answer: "Yes."

4. If the deed above named was signed by the plaintiffs or any of them, was same ever delivered to the defendant? Answer: "No."

5. If said deed was signed, did it ever pass from the control of those who signed it before it was destroyed? Answer: "It never passed to control of defendant. It was left in care of Homer Flowe, who destroyed it."

6. If Laura Williams and her husband, M. A. Williams, signed the said deed, was privy examination of said Laura J. Williams taken after her signature? Answer: "Yes."

7. Did the defendant tender to the plaintiffs, and if so, to which of them, $3,299 in money, in payment of the purchase money for the land, and was the same refused and declined, as alleged in the answer? Answer: "Yes; all of them, through Mrs. Flowe."

8. What actual permanent improvement in amount and value has the defendant put upon the land tending to enhance the value of the same since 2 October, 1909? Answer: "$150."

9. Since the defendant has been in possession of the land, what has been the actual rental value of the said land annually during his occupancy? Answer: "$250."

On the rendition of the verdict the court set aside the answer to the sixth issue, that as to the signature by Laura Williams and her husband, and the cause being continued at April Term, 1914, before his Honor, *Harding, judge,* and as to responsibility of Laura Williams, the jury rendered a further verdict as follows:

1. Did the plaintiff M. A. Williams sign the deed caused to be prepared by defendant Hartwick? Answer: "No."

2. If Laura J. Williams and her husband, M. A. Williams, signed the deed, was privy examination of said Laura J. Williams taken after her signature? Answer: "No."

On the verdict, defendant having tendered the contract price, insisted on conveyance on the part of M. L., B. B., and H. P. Flowe.

Judgment was entered that they convey their title and interest and that the judgment be effective as a deed for same.

Plaintiff, having assigned errors, appealed from the judgment directing conveyance of title by the parties other than Laura Williams, and defendant appealed, assigning errors in the disposition of the case by which Laura Williams was relieved.

*W. G. Means, Self & Bagby, and Tillett & Guthrie for plaintiffs.*
*H. S. Williams, T. D. Maness, and L. T. Hartsell for defendant.*

HOKE, J., after stating the case: It is established in this jurisdiction that in the absence of fraud, mistake, undue influence, or oppression, a binding contract to convey land will be specifically enforced by the courts, and that our statute on the subject, Revisal 1905, sec. 976, requiring that such contracts or some memorandum or note thereof shall be put in writing and signed by the party to be charged therewith or by some other person thereto lawfully authorized, is satisfied when the writing, in express terms or by reasonable intendment, contains a promise to convey on the part of the owner, and his signature, evincing a purpose to come under such obligation, appears anywhere in the instrument, the statute not using the word "subscribe"; and further, that a written contract to convey, signed by an agent, will bind, though the authority be given by parol. *Burrus v. Starr,* 165 N. C., 657; *Combes v. Adams,* 150 N. C., 64.

Our authorities also sustain the position, very generally recognized, that when the vendor's title proves to be defective in some particular or his estate is different from that which he agreed to convey, unless the defects are of a kind and extent to change the nature of the entire agreement and affect its validity, the vendee may, at his election, compel a conveyance of such title or interests as the vendor may have and allow the vendee a pecuniary compensation or abatement of the price propor-

tioned to the amount and value of the defect in title or deficiency in the subject-matter (*Lumber Co. v. Wilson,* 151 N. C., 154; *Tillery v. Land Co.,* 136 N. C., 537; *Rodman v. Robinson,* 134 N. C., 503; Pomeroy on Contracts, sec. 434), a principle usually prevailing where the defects existed at the time of making the contract, but which is at times extended to such as arise later. *Sutton v. Davis,* 143 N. C., p. 474.

In applying the principles embodied in these and other cases, most or all of them relevant to the facts presented, there are many decisions which hold that where a written deed purporting to convey land has been delivered and the instrument, by reason of some informality, is ineffective to presently pass the title, it may be treated as a contract to convey within the meaning of the statute and enforced accordingly. *Blacknal v. Parish,* 59 N. C., 70. And it has been also held that a parol contract to convey realty may be constituted a binding agreement within the meaning of the statute when a written deed substantially embodying the contract has been signed by the parties, though not delivered.

While this has been said to be against the great weight of authority (see *Hallsell v. Renfrow,* 202 U. S., 286; 50 L. Ed., p. 1032; *Morrow v. Moore,* 98 Maine, 373; 20 Cyc., p. 257), our own Court, in *Magee v. Blankenship,* 95 N. C., 563, seems to have approved the position.

But while this and some other cases have allowed to an undelivered deed, substantially containing the contract, the effect of a written memorandum, within the meaning of the statute of frauds, neither this nor any other decision, so far as examined, will sustain the position that such a deed may both create the obligation and supply the written evidence of the contract.

In *Magee v. Blankenship* there was a definite contract for an exchange of lands between the parties and the undelivered deed was allowed as written evidence of the same satisfying the requirements of the statute. In *Parill v. McKinley,* 50 Va., 1, to which we were cited, the headnote is: "On a contract for the exchange of land, a deed executed by one of the parties and undelivered is a sufficient memorandum, etc."

In *Bowles v. Woodson,* 47 Va., 78, the bill commences by alleging that plaintiff "verbally, in the presence of several witnesses, *contracted* with the defendant for the purchase of land, etc."

In *Johnston v. Jones,* 85 Alabama, the bill states: "The terms of sale having been agreed upon, deeds were subsequently prepared, etc."

From the facts in evidence it appears that the remainder in the property was owned by Mrs. Flowe's children, her coplaintiffs, and before they can be compelled to convey their property it must be shown that a contract to do so has been made by them or by some one they have authorized to make it, or that they have ratified a contract made or professing to be made for them. There is no testimony in this record that they have

ever agreed to convey their interest to any one, and on careful perusal of the facts we fail to find any evidence showing that they have ever legally ratified a contract to that effect.

It is well understood that in order to a valid ratification, when an unauthorized contract has been made for alleged principal, the agent must have contracted or professed to contract for a principal and the latter must signify his assent or his intent to ratify, either by words or by conduct. *Rawlings v. Neal,* 126 N. C., 275; 2 Page on Contracts, sec. 972; Clark on Contracts, p. 502; 2 Mechem on Agency, secs. 477, 478; 1 A. and E. Enc., sec. 1187.

In the present case there is nothing on the face of the contract to indicate that Mrs. Flowe acted or professed to act for her children, and while the evidence *ultra* may permit the inference that she intended to act for them, there was nothing which signified or was designed to signify to defendant that the children assented to, ratified, or intended to ratify their mother's contract.

It is true that while conferring together about it they signed this undelivered deed (Homer Flowe was under 20 at the time and could not assent); it was, no doubt, in the language of the issue, their purpose to ratify the contract, but they did not carry out their purpose, but destroyed the deed before delivery, and have never signified in any way that they assented to or ratified the agreement. The position is presented in different ways by plaintiffs' exceptions entered during the progress of the trial, and, on the facts in evidence, we are of opinion that plaintiffs were entitled to the instruction that they were under no binding agreement to convey their interest in the property.

For the error indicated, we hold that plaintiffs are entitled to a new trial, and it is so ordered.

New trial.

DEFENDANT'S APPEAL.

HOKE, J. As heretofore shown, the defendant appealed from judgment on the verdict by which Mr. and Mrs. Williams were relieved from any and all obligation under the agreement of Mrs. Flowe.

Having decided, on plaintiff's appeal, that there were no facts in evidence tending to show that any of the children were under a binding obligation to convey their interest in the property, the errors, if any, incident to the trial and determination of disputed questions as to Mrs. Williams, by reason of her being a married woman, are no longer of importance, and the judgment relieving her from obligation is therefore affirmed.

No error.